UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | | |
|---|---|---|
| ANDREW ABERLE, | ) | CIV. 06-5057-KES |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER ON PLAINTIFF'S MOTION |
| | ) | TO COMPEL [DOCKET 79] |
| POLARIS INDUSTRIES, INC., and | ) | |
| DEN HARTOG INDUSTRIES, INC., | ) | |
| d/b/a Ace Roto Mold Manufacturing, | ) | |
| Inc., | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

This matter comes before the court pursuant to Plaintiff Andrew J. Aberle's motion compelling Defendant Polaris Industries, Inc. (hereinafter "Polaris") to disclose emails and correspondence exchanged between Polaris' attorney, Timothy J. Mattson, and its then-expert, Daniel J. Moser, who has now been designated as a fact witness. [Docket 79]. Mr. Aberle also moves the court to order Polaris to reimburse him for the reasonable expenses and attorney's fees incurred in resolving the motion to compel. Id. Mr. Aberle represents to the court that he has made a good faith effort to resolve this matter without the court's intervention, but to no avail. Id. The district court referred the motion to compel to this magistrate judge for ruling. [Docket 81].

## FACTS

The court incorporates by reference those facts set forth in its order dated August 7, 2008.  See Docket 119.  In that order, the court determined that Polaris could redesignate its expert, Daniel Moser, as a fact witness.  The court reserved ruling on the issues of attorney-client privilege, work product doctrine, and possible sanctions against Polaris until Polaris submitted the e-mails and communications in dispute to the court for *in camera* review.  The court also required Polaris to submit an affidavit "detailing Mr. Moser's position and responsibilities at Polaris, his employment duties, how he is a 'principal client contact,' whether he has the authority to obtain legal services on behalf of Polaris and to act on legal advice on behalf of Polaris."  Id. (emphasis in original).  On August 18, 2008, Polaris submitted an affidavit from Daniel Moser and an affidavit from John Wackman, Assistant General Counsel for Polaris, detailing Mr. Moser's responsibilities, duties, and authority as an employee of Polaris.  Also on August 18, 2008, the court received the disputed e-mails and e-mail strings and an accompanying privilege log for *in camera* review.

## DISCUSSION

**A.   The Attorney-Client Privilege**

The law on this issue is set forth in the court's order dated August 7, 2008, which is incorporated by reference herein.  Based on the supplemented

2

record, the court finds that Mr. Moser is a "representative" of Polaris under South Dakota Codified Laws 19-13-2 and 19-13-2, the state's statutes on the law of attorney-client privilege.  See SDCL §§ 19-13-2, 19-13-3.  A representative of a corporate client is "one having authority to obtain professional legal services, or to act on advice rendered pursuant thereto, on behalf of the client."  SDCL § 19-13-2.  Mr. Moser's affidavit provided detailed information regarding his responsibilities at Polaris, including his role in defense litigation support.  See Docket 120.  The court finds the following information provided by Mr. Moser particularly illuminating on the issue of whether he is a representative of Polaris.

Mr. Moser has worked at Polaris for approximately 14 years and, currently, is an engineering supervisor for Polaris' ATV/UV divisions, where he manages a staff of 15 employees.  Id.  From 2007 to date, a significant amount of Mr. Moser's work time has been spent on "litigation support."  Id.  Mr. Moser manages two employees who are engaged in defense litigation support.  Id.  His responsibilities with regard specifically to defense litigation include the following: "coordinating and supporting activities between product engineering and product liability attorneys as required"; "managing the safety claim review process and assisting with the review of dealer submitted safety claims"; "managing the coordination of fact research activities"; "managing, supervising and/or performing investigations of accident vehicles and accident scenes";

"providing testimony, including depositions as a fact witness, corporate representative, and/or expert, as required or requested by counsel"; "performing interpretive, critical analysis of opposing experts' reports and depositions"; "assisting attorneys in trial preparation"; "conducting performance evaluations of direct reports"; and "ensuring Polaris staff conduct themselves in a professional and responsible manner." Id.

Mr. Aberle's affidavit also speaks to the issue of whether he possesses the authority to obtain legal services and to act upon the advice of counsel on behalf of Polaris. Id. Mr. Aberle states that Polaris has authorized him "to act as an authorized representative in obtaining professional legal services in defense of Polaris and to act on behalf of Polaris on advice rendered by its in-house and outside legal counsel." Id. To that end, Mr. Aberle assists in "manag[ing] ongoing litigation" and is "one of the principal individuals" in regular contact with other Polaris managers, in-house counsel, and outside counsel on such subjects as product evaluation and analysis, production of discovery materials, and scene and vehicle inspections. Id. Finally, Mr. Aberle has the authority to implement the advice of legal counsel, working with counsel to analyze and evaluate various claims. Id. The close working relationship between Mr. Aberle, top Polaris employees, and in-house and outside legal counsel is apparent by virtue of the fact that Mr. Aberle received or sent e-mails to the following individuals: from the firm Bowman and Brooke,

LLP, two paralegals, two legal secretaries, a senior investigator, a trial assistant, and four attorneys and, from Polaris, the assistant general counsel, director of engineering special projects, product claims manager, paralegal, senior product investigator engineer, and testing supervisor. Id. Finally, Mr. Aberle attests that he expected the disputed e-mails to remain private at the time of the communication, he never intended or consented to disclose the information contained in the e-mails, and, to that effect, he participated in the decision to redesignate him as a fact witness in order to prevent disclosure. Id.

The affidavit of John Wackman, Assistant General Counsel at Polaris, addresses the responsibilities and authority of Mr. Moser in the field of defense litigation support for Polaris. See Docket 121. Mr. Wackman attests that Mr. Moser's involvement with in-house and outside legal counsel is significant, with counsel relying "heavily" on Mr. Moser's advice and input regarding safety and warranty claims and lawsuits involving recreational vehicles sold by Polaris. Id. Mr. Wackman also attests to the following: Mr. Moser manages staff engaged in litigation support; Mr. Moser is involved on a daily basis with Polaris managers and in-house counsel; Mr. Moser possesses the authority to obtain legal services on behalf of Polaris from outside counsel; Mr. Moser works with counsel to develop litigation strategies in ongoing cases and to arrange and attend vehicle and scene inspections; and Mr. Moser has the authority to implement the advice of counsel by, for example, directing his staff to comply

with discovery requests and conduct discovery searches.  Id.  Finally, Mr. Wackman unequivocally states that Mr. Moser "was a designated and authorized Polaris representative in [this] case" and was "essential" to the defense of this lawsuit.  Id.

In light of this information, the court is satisfied that Mr. Moser is a representative of Polaris at least for purposes of the present case.  It is clear that Mr. Moser has the authority to obtain professional legal services on behalf of Polaris or to act on the advice of counsel on behalf of Polaris.  See SDCL § 19-13-2.  It is also clear that the e-mails exchanged between Mr. Moser, other Polaris employees, and legal counsel satisfy the statutory requirements of the attorney-client privilege. South Dakota Codified Law § 19-13-3 sets forth the attorney-client privilege, as follows:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client:
> (1) Between himself or his representative and his lawyer or his lawyer's representative;
> (2) Between his lawyer and the lawyer's representative;
> (3) By him or his representative or his lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another party in a pending action and concerning a matter of common interest therein;
> (4) Between representatives of the client or between the client and a representative of the client; or
> (5) Among lawyers and their representatives representing the same client.

SDCL § 19-13-3.

"A communication is 'confidential' if not intended to be disclosed to third parties other than those to whom disclosure is made in furtherance of the rendition of professional legal services to the client or those reasonably necessary for the transmission of the communication." SDCL § 19-13-2. There is no doubt that the e-mails at issue were intended to be confidential communications between the parties. Indeed, Polaris redesignated Mr. Moser as a fact witness in order to keep those communications confidential. Further, Mr. Moser attested to the fact that he expected the e-mails to remain private at the time of the communication and that he never intended or consented to disclose the information contained in the e-mails. See Docket 120. Finally, there is no doubt that the e-mails were sent in furtherance of the defense of this lawsuit.

Because Polaris has met its burden of proof in asserting the attorney-client privilege with respect to the e-mails in dispute, the court finds these communications to be exempt from disclosure to Mr. Aberle under SDCL § 19-13-3. The court need not address the issue of whether the e-mails are also protected from disclosure by the work-product doctrine.

**B.   Sanctions Requested by Mr. Aberle**

Mr. Aberle also requests that the court order Polaris to reimburse him for the expenses and attorney's fees incurred in preparing and litigating this motion under Federal Rule of Civil Procedure 37(a)(5)(A). In light of the

supplemented record, the court finds that Polaris was substantially justified in claiming privilege to resist providing requested discovery materials to Mr. Aberle.  Thus, sanctions against Polaris are not warranted in this case.

## CONCLUSION

Good cause appearing, it is hereby

ORDERED that Mr. Aberle's motion to compel [Docket 79] is denied.

## NOTICE TO PARTIES

Pursuant to 28 U.S.C. § 636(b)(1)(A), any party may seek reconsideration of this order before the district court upon a showing that the order is clearly erroneous or contrary to law.  The parties have ten (10) days after service of this order to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  See Fed. R. Crim. P. 58(g)(2).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  Objections must be timely and specific in order to require review by the district court.

Dated September 5, 2008.

                         BY THE COURT:

                         /s/ *Veronica L. Duffy*
                         VERONICA L. DUFFY
                         UNITED STATES MAGISTRATE JUDGE